Gene R. MAXWELL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–783A214.

Court of Appeals of Indiana,
Fourth District.

Nov. 22, 1983.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

After a bench trial, Gene R. Maxwell was convicted of Battery. He appeals contending that the trial judge erred in admitting a statement made by him and that the evidence was insufficient to sustain his conviction.

We affirm.

The facts most favorable to the State are as follows: Maxwell was the father of twin boys, Patrick and Curtis, who were ten months old. Maxwell and his wife, Virginia, were living together in September 1982, and had been doing so since July of that year.[1] Virginia was often absent from the home from 5:30 p.m. to 9:30 p.m., leaving the twins with Maxwell. During September 1982, Virginia noticed that the twins were bruised in the same areas. She believed that Maxwell played "rough" with the boys. . She particularly noticed a bruise on Patrick's stomach.

On September 20, 1982, the twins were cranky and crying. Maxwell told Virginia that Patrick's arm "popped" when he was moving the baby. That arm was swollen. She took Patrick and Curtis to the hospital. There, the physician examined both. Patrick[2] had multiple bruises and bite marks in various stages of healing. X-rays of Patrick showed an acute fracture of the left

---

1. Virginia and Maxwell had been separated since shortly after their marriage in 1981. Maxwell moved back into the house in July 1982.

2. Maxwell was charged with Battery of both Patrick and Curtis. He was convicted of the Battery of Patrick and acquitted of the Battery of Curtis. We will therefore discuss only those facts relevant to Patrick's injuries.

upper arm, and fractures of both tibias (shin bones). One of the leg fractures had a little healing taking place, dating it at 10 to 14 days. But the fracture of the tibia of the left leg was "acute", meaning it was less than three days old. The fracture of the left arm was also less than three days old. Such injuries were not consistent with what one would ordinarily expect to have occurred in a child that age. All three bone fractures were "radial fractures", meaning they had been caused by a twisting motion. The bite mark the examining physician observed on Patrick was an adult bite mark, judging from its size and the number of teeth. It would not be consistent with a bite from Curtis.

On September 22, 1982, Maxwell, who was seventeen years old, signed a "Juvenile Rights Waiver", which incorporated the "*Miranda*" rights warning. These were read to Maxwell and his mother. Maxwell signed the waiver in his mother's presence. On October 8, 1982, Maxwell gave a statement in writing, after having been reminded of the Rights Waiver. Although his parents were at the police station (they had brought him there voluntarily), they were not present during the taking of the entire statement. In his statement, Maxwell admitted that before any bruises were noticed on the children he took some L.S.D. at a friend's house, and since then he had been experiencing periodic blacking out. Shortly before the children were taken to the hospital, he picked Patrick up by the arm and heard it make a popping sound. He thought the sound was similar to the sound of popping knuckles, and did not think it was an injury. Any other time he injured the children would have been when he was blacked out because he did not remember any other occasion.

Maxwell first contends the trial court erred in admitting his statement because the State failed to show compliance with Ind.Code 31–6–7–3, which governs a juvenile's waiver of rights. That section, in part, provides:

(a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child, if the child knowingly and voluntarily joins with the waiver; or

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

(b) The child may waive his right to meaningful consultation under subdivision (a)(2)(C) if he is informed of that right, if his waiver is made in the presence of his custodial parent, guardian, custodian, guardian ad litem, or attorney, and if the waiver is made knowingly and voluntarily.

Maxwell specifically contends there was no evidence that he had a meaningful consultation with his mother before his statement was made. The State counters that Maxwell waived his right to a meaningful consultation pursuant to Ind.Code 31–6–7–3(b).

█ The waiver of September 22, 1982 was explained to Maxwell and his mother, Phyllis, in the presence of both of them. The rights waiver states explicitly that Maxwell was giving up his right to meaningful consultation. Maxwell signed the waiver. Phyllis Maxwell, in addition to signing as a witness to her son's signature, acknowledged over a second signature that she had a meaningful consultation with her son before they both signed the waiver. Thus, Maxwell waived his right to a meaningful consultation. The court did not err in admitting his statement.

█ Maxwell also challenges the sufficiency of the evidence to support his conviction. In reviewing the sufficiency of the evidence we neither weigh the evidence nor

judge the credibility of witnesses, but examine that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Johnson v. State,* (1981) Ind.App., 419 N.E.2d 232. The evidence was sufficient to support the conviction. The children did not exhibit bruises until their father moved back into the house. They seemed to get their bruises when the mother was absent from the house and the children were in the exclusive possession of Maxwell. Furthermore, the mother saw Maxwell play rough with the boys and shake Patrick. There is also Maxwell's statement that he heard Patrick's arm pop when he picked Patrick up by the arm. Considering all this evidence plus the nature of Patrick's injuries, the evidence is sufficient to support the conviction.

Affirmed.

CONOVER, P.J., and MILLER, J., concur.